# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| CRICKET COMMUNICATIONS, INC., a Delaware coporation,<br><br>Petitioner,<br><br>v.<br><br>ALL YOU CAN TALK PARTNERS, INC., a Utah corporation; and WILLIAM H. CURTIS, an individual residing in Utah,<br><br>Respondents. | REPORT AND RECOMMENDATION<br><br>Case No. 2:11-cv-315-DB-PMW<br><br>District Judge Dee Benson<br><br>Magistrate Judge Paul M. Warner |

District Judge Dee Benson referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1] Before the court are (1) Cricket Communications, Inc.'s ("Petitioner") motion to confirm the parties' arbitration award and enter judgment;[2] and (2) William H. Curtis's ("Respondent") motion to vacate the parties' arbitration award, for a hearing, and for limited discovery.[3] The court has carefully reviewed the written memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motions on the basis of the written memoranda. *See* DUCivR 7-1(f).

---

[1] *See* docket no. 17.

[2] *See* docket no. 2.

[3] *See* docket no. 8.

## BACKGROUND

Petitioner is a Delaware corporation with its principal place of business in California. All You Can Talk Partners, Inc. ("AYCT") is a Utah corporation with its principal place of business in Utah. Respondent is an individual who resides in Utah.

In July 2008, Petitioner and AYCT entered into an agreement ("Premier Dealer Agreement"), pursuant to which AYCT was authorized to operate retail stores that sold Petitioner's wireless phones and service. In relevant part, the Premier Dealer Agreement provides:

> Except with respect to a breach of the obligations of confidentiality, non-competition, use of Marks and actions detrimental to the Business of Cricket, as to which Cricket shall have the right to seek injunctive remedy or other equitable remedies it deems reasonabl[e] and appropriate, disputes shall be resolved by arbitration in accordance with the Rules of the American Arbitration Association. To the extent not specifically provided herein, all arbitrations hereunder shall be governed by the Federal Arbitration Act.[4]

In early 2009, Petitioner terminated the Premier Dealer Agreement.

In order to resolve certain disputes related to the termination of the Premier Dealer Agreement, Petitioner filed an arbitration demand in April 2009. Earlier that same month, AYCT filed suit against Petitioner in Utah state court, alleging several claims against Petitioner related to termination of the Premier Dealer Agreement. In late-April 2009, the American Arbitration Association ("AAA") acknowledged receipt of Petitioner's demand and, "in order to

---

[4] Docket no. 3, Exhibit C, Part 2.

assist the AAA in providing [the parties] with arbitrators free from conflicts," provided the parties with a "Checklist for Conflicts" so that each side could "list those witnesses [the parties] expect to present, as well any persons or entities with an interest in these proceedings."[5] Thereafter, AAA provided the parties with two lists of potential arbitrators, identifying a total of fifteen individuals, along with their AAA resumes. Pursuant to AAA rules, each party was directed to rank the arbitrators in order of preference and to strike any potential arbitrators it deemed unacceptable. As a result of this process, in which Respondent and AYCT fully participated, AAA notified the parties that attorney C. Scott Greene ("Greene") had been selected as the arbitrator. AAA also notified the parties that they should "advise the [AAA] of any objections to the appointment of . . . Greene by July 6, 2009, copying the other side."[6] Neither AYCT nor Respondent raised any objection to the appointment of Greene as arbitrator, and, as a result, AAA confirmed his appointment in July 2009.

In August 2009, the parties stipulated and agreed that AAA had jurisdiction over all claims and parties in the dispute, including the claims filed by AYCT against Petitioner in Utah state court. The parties also stipulated and agreed that the arbitration hearing would be held in Salt Lake City, Utah.

The parties engaged in arbitration before Greene. In the arbitration, Petitioner sought damages from AYCT for breach of the Premier Dealer Agreement and conversion for failing to

---

[5] Docket no. 12, Exhibit 2.

[6] Docket no. 12, Exhibit 3.

return Petitioner's merchandising materials following Petitioner's termination of the Premier Dealer Agreement. Because Respondent had guaranteed AYCT's compliance with the Premier Dealer Agreement, Petitioner also sought damages against Respondent personally. Petitioner further sought repayment of $210,789.03, an amount stipulated and agreed to by Respondent and AYCT, plus interest, pursuant to a credit agreement with Brightpoint ("Brightpoint Agreement"), Petitioner's agent, and Respondent's guaranty of the Brightpoint Agreement. AYCT, Respondent, and a related entity filed sixteen counterclaims against Petitioner and sought more than $5,000,000 in compensatory damages, plus attorney fees, costs, and punitive damages.

In January 2010, Petitioner moved for judgment on the pleadings as to AYCT's and Respondent's claims for intentional interference with economic relations, promissory estoppel, violation of the Utah Business Opportunities Act, violation of the Utah Consumer Sales Practices Act, and civil conspiracy. Greene denied Petitioner's motion in its entirety.

Thereafter, the parties engaged in extensive discovery, producing more than 51,000 pages of documents in multiple productions and taking thirteen depositions. Petitioner produced documents from seven custodians. At no time did any party identify Walter Z. Berger ("Berger"), Petitioner's Chief Financial Officer, as a witness in the arbitration. No documents were produced from his files, and his name was never mentioned in any party's pleadings, motions, or testimony. AYCT and Respondent never sought to take Berger's deposition. Berger's name appeared on no party's witness list. He did not appear at or attend the arbitration hearing.

Petitioner then moved for summary judgment. On that motion, Greene dismissed ten of AYCT and Respondent's sixteen counterclaims. The parties proceeded to hearing on all the remaining claims. An evidentiary hearing was held in Salt Lake City, Utah from January 17-27, 2011. The parties submitted post-hearing briefing on February 7, 2011, and closing arguments were held on February 11, 2011. At closing arguments, the parties confirmed that they each had a full and fair opportunity to present to Greene all evidence they wished to present.

Greene issued his award on March 28, 2011, in which he found for Petitioner and against AYCT and Respondent. The total amount awarded to Petitioner was $1,338,099.93.

Petitioner filed its motion to confirm the arbitration award in this case on April 4, 2011. In response, on May 4, 2011, Respondent filed his motion to vacate the parties' arbitration award, for a hearing, and for limited discovery. No attorney has entered an appearance for AYCT, and it has filed no response, answering statement, opposition, or motion to vacate.

## ANALYSIS

In its motion, Petitioner asks the court to affirm Greene's arbitration award and to enter judgment in its favor. In his motion, Respondent asks the court to vacate the arbitration award, to conduct a hearing, and to allow him to conduct limited discovery because of "evident partiality or corruption" in Greene and because the award was procured by "fraud[] or undue means."[7] Respondent bases his arguments on allegations that Greene may have met Berger at some point in the past during their professional careers.

---

[7] Docket no. 8 (quotations and citation omitted).

"A party attacking the legality of an arbitration award provided for within a contract has the burden of sustaining such an attack" and "[c]ourts are, expectedly, justified in exercising great caution when asked to set aside an arbitration award, which is the product of the theoretically informal, speedy and inexpensive process of arbitration, freely chosen by the parties." *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir. 1982).

### I. Evident Partiality or Corruption

Respondent first argues that there was evident partiality or corruption in the arbitration process. The federal courts look to the following factors to determine "evident partiality" of an arbitrator:

> (1) any personal interest, pecuniary or otherwise, the arbitrator has in the proceeding; (2) the directness of the relationship between the arbitrator and the party he is alleged to favor; (3) the connection of the relationship to the arbitration; and (4) the proximity in time between the relationship and the arbitration proceeding.

*Consolidation Coal Co. v. Local 1643, United Mine Workers*, 48 F.3d 125, 130 (4th Cir. 1995). The Tenth Circuit Court of Appeals has held that "only *clear evidence of impropriety* . . . justifies the denial of summary confirmation of an arbitration award." *Ormsbee Dev. Co.*, 668 F.2d at 1147 (emphasis added). Thus, to vacate an arbitration award based on evident partiality, "the evidence of bias or interest of an arbitrator must be direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Id*. (refusing to vacate award or conduct an evidentiary hearing based on the losing party's allegations of partiality arising from alleged connections between the arbitration and the successful party's law firm).

Respondent's speculation about the connections between Greene and Berger satisfy none of the foregoing criteria. First, Respondent has failed to persuade the court that the alleged connections between Greene and Berger indicate that Greene had a personal or financial interest in the outcome of the arbitration proceeding.

Second, Respondent has failed to establish any connections between Greene and any party to the arbitration, including Petitioner. Instead, Respondent speculates that Greene might have known Berger, as the result of Berger's employment at a power company called LG&E during the late 1990s. However, Berger was not a party to the arbitration, and so this element is not satisfied.

Third, even assuming that some relationship exists Greene and Berger as an individual, Respondent has failed to demonstrate that it has any connection to the arbitration. Berger was never identified by any party as a witness, and Respondent and AYCT never once mentioned Mr. Berger's name, in any pleading, on any witness list, or in any deposition. Further, the arbitration had nothing to do with any of Cricket's senior-most officers, including Berger. Berger was not a client representative at the hearing and had nothing to do with the arbitration.

Finally, there is no proximity in time between the connections alleged and the arbitration proceeding. Respondent contends that Berger once worked for a power marketing company from 1996 to 1999, which company claims to have signed a large power marketing contract. He further contends that Greene's publicly available law firm resume includes the fact that he represented an unidentified power company in arbitration arising out of a large power marketing contract. Assuming those things to be true means only that Greene met Berger, a non-party to

7

and non-witness in a 2009 arbitration, as many as ten years earlier. Even assuming that is true, it is insufficient to show evident partiality in Greene.

In short, Greene had no personal interest in this arbitration, he had no relationship with any party to the arbitration, and, even assuming he did come to know Berger in some professional capacity while Berger worked for an electric power company over a decade ago, Berger was not personally involved in this arbitration. Respondent's arguments are nothing more than a "disgruntled party . . . seiz[ing] upon an undisclosed relationship as a pretext for invalidating the award." *ANR Coal Co., Inc. v. Cogentrix of N.C., Inc.*, 173 F.3d 493, 500 (4th Cir. 1999) (quotations and citation omitted). Respondent's alleged undisclosed connections between Greene and Berger are not "clear evidence of impropriety"; instead, they are exactly the kind of "remote, uncertain, or speculative" allegations of bias that are wholly insufficient to justify setting aside an arbitration award. *Ormsbee Dev. Co.*, 668 F.2d at 1147.

In another argument concerning the issue of evident partiality or corruption, Respondent asserts that Greene knew that Berger worked for Cricket. Respondent then concludes that Greene should have disclosed that fact. Even crediting the contention that Greene met Berger in some capacity in the past, that argument fails. Greene had no obligation to study the names of every employee, officer, and board member of the parties to this arbitration on his own, determine if he knew any of them, and then disclose that fact. The burden of disclosing to AAA any persons or entities a party wishes to be checked for conflicts is necessarily on the parties. Accordingly, the AAA Commercial Arbitration Rules do "not require a potential arbitrator to disclose *every* interest or relationship with a party that could conceivably be regarded as a basis

8

for bias. Rather, [the Rules] only require[] disclosure of an interest or relationship likely to affect impartiality." *ANR Coal Co., Inc.*, 173 F.3d at 498 (quotations and citation omitted). In this regard, the AAA Code of Ethics for Arbitrators in Commercial Disputes directs an arbitrator to disclose "known" relationships with "any individual *whom they have been told will be a witness*." AAA Code of Ethics, Cannon II.A (emphasis added). The federal courts uphold these processes, and likewise do not require an arbitrator to disclose "every former social or financial relationship with a party or a party's principals," *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 678 (7th Cir. 1983), or to "provide the parties with [a] complete and unexpurgated business biography." *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 151 (1968) (White, J. and Marshall, J., concurring).

Here, AAA, "in order to . . . provid[e] [the parties] with arbitrators free from conflicts," sent to the parties at the outset of this case a "Checklist for Conflicts," so that the parties could "list those witnesses you expect to present, as well as any persons or entities with an interest in these proceedings."[8] Although the checklists are disclosed only to AAA, they are the means by which the parties inform AAA and the prospective arbitrator of "the full and complete names of all persons, firms, companies or other entities involved in this matter," including "witnesses, consultants, and attorneys," and "subsidiary and other related entities" for purposes of conflict checks and disclosures.[9] Had AYCT, Respondent, or counsel genuinely believed that Berger

---

[8] Docket no. 12, Exhibit 2.

[9] *Id*.

had anything to do with this case or with an arbitrator's ability to be impartial, they should have disclosed it.

Greene was not required to disclose his alleged connections with Berger. Greene had no financial or other interest in Petitioner or in the outcome of the arbitration, and even Respondent does not suggest that he did. The attenuated and speculative connections that Respondent identifies are not those that would reasonably affect an individual's impartiality or independence. *See, e.g.*, *ANR Coal Co., Inc.*, 173 F.3d at 502. In addition, there is not any indication that the alleged connections were known to Greene. Even assuming that Greene did meet Berger at some point in the past, Respondent has failed to establish that Greene knew where Berger is now employed and, in particular, that he now works for Petitioner.

As noted by Petitioner, no arbitrator is obligated to disclose the names of every employee of all of his clients, past and present, the names of everyone who ever worked at the same company as any of his family members, no matter how large, and the names of everyone who he has ever come into contact with in connection with any of his charitable work or community service. Greene may or may not have met Berger, but Greene had no reason to disclose anything concerning Berger because Berger had no involvement in the arbitration. Even if that were not the case, "an arbitrator's failure to disclose, in and of itself, provides no basis to vacate an award." *ANR Coal Co., Inc.*, 173 F.3d at 495.

Based on the foregoing, the court concludes that Respondent's argument concerning evident partiality or corruption is without merit.

## II. Fraud or Undue Means

Respondent also argues that the arbitration award should be vacated because it was procured by fraud or undue means. Vacating an arbitration award on the bases of fraud or undue means requires the movant to show (1) by clear and convincing evidence the alleged fraudulent conduct or undue means, (2) that the fraud or undue means was not discoverable upon the exercise of due diligence prior to or during the arbitration, and (3) that a nexus or material relationship exists between the alleged fraud or undue means and the basis for the arbitrator's decision. *See Forsythe Int'l, S.A. v. Gibbs Oil Co.*, 915 F.2d 1017, 1022 (5th Cir. 1990); *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. 1988). "Fraud requires a showing of bad faith during the arbitration proceedings, such as bribery, undisclosed bias of an arbitrator, or willfully destroying or withholding evidence" and "undue means connotes behavior that is immoral if not illegal or otherwise in bad faith." *MPJ v. Aero Sky, L.L.C.*, 673 F. Supp. 2d 475, 495 (W.D. Tex. 2009) (quotations and citations omitted). "[I]n order to protect the finality of arbitration decisions, courts must be slow to vacate an arbitral award on the ground of fraud." *Foster v. Turley*, 808 F.2d 38, 42 (10th Cir. 1986) (quotations and citation omitted).

Respondent has failed to persuade the court that there was any fraud or undue means in the arbitration process. Respondent has presented no evidence, much less clear and convincing evidence, that there was. The crux of Respondent's fraud and undue means argument is only that Greene knew, or may have known, Berger at some point in the past. Again, Berger was not involved in the arbitration. As set forth above, even assuming that is true, such knowledge was neither required to be disclosed nor did it constitute evident partiality. Also fatal to his

11

argument is the fact that Respondent cannot show that the alleged fraud or undue means was not discoverable upon the exercise of due diligence prior to or during the arbitration, as is required. *See Bonar*, 835 F.2d at 1383. This is because, as Respondent admits, the alleged connections "were easily gathered from information available to the public."[10] Finally, Respondent cannot demonstrate how the alleged connections between Greene and Berger materially relate to the arbitrator's decision. The only link Respondent makes between the alleged bad acts and the arbitration is the fact that Petitioner prevailed and his apparent belief that the arbitrator should have "'split the baby'" on one of the claims.[11] However, disagreement with Greene's decision is not evidence at all, let alone evidence that the arbitration award was procured by fraud or undue means.

Finally, as noted by Petitioner, Respondent also merges the alleged conduct of Petitioner that was the subject of the arbitration with the procuring of an arbitration award through fraud. The fact that Respondent alleged a fraud claim against the other party does not establish that the award was procured by fraud, bribery, or anything else improper. In short, Greene's consideration and subsequent rejection of Respondent's fraud claim does not create fraud in the arbitration proceeding.

For these reasons, the court concludes that Respondent's argument concerning fraud and undue means is likewise without merit.

---

[10] Docket no. 8 at 5.

[11] *Id*. at 8.

## III. Hearing and Discovery

A court's "review of arbitral awards is among the narrowest known to the law." *Litvak Packing Co. v. United Food & Commercial Workers, Local Union No. 7*, 886 F.2d 275, 276 (10th Cir. 1989); *see also Dominion Video Satellite, Inc. v. Echostar Satellite, L.L.C.*, 430 F.3d 1269, 1275 (10th Cir. 2005) ("Judicial review of arbitration panel decisions is extremely limited; indeed, it has been described as among the narrowest known to law." (quotations and citation omitted)). This is so because "[i]n consenting to arbitration, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001) (quotations and citations omitted). The federal courts "employ this limited standard of review and exercise caution in setting aside arbitration awards because one purpose behind arbitration agreements is to avoid the expense and delay of court proceedings. A court may not, therefore, independently judge an arbitration award." *Id.* (quotations and citations omitted). Courts allow post-award discovery only "where clear evidence of impropriety has been presented." *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 702 (2d Cir. 1978).

As has been established above, Respondent's allegations, even if assumed to be true, do not constitute evidence, much less clear evidence, of any impropriety in the arbitration process. Accordingly, his request for discovery must be rejected. In addition, the court concludes that holding a hearing on Respondent's allegations is neither necessary nor appropriate.

## IV. AYCT

As noted by Petitioner, AYCT has failed to properly oppose Petitioner's motion to confirm the arbitration award. Petitioner's motion seeks entry of judgment against both Respondent and AYCT. While Respondent has appeared pro se to oppose Petitioner's motion, AYCT filed no opposition or other response. It is well settled under Tenth Circuit precedent that a corporate entity, such as AYCT, is not allowed to appear pro se. *See, e.g.*, *Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006) ("It has been our long-standing rule that a corporation must be represented by an attorney to appear in federal court."); *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 556 (10th Cir. 2001) ("As a general matter, a corporation or other business entity can only appear in court through an attorney and not through a non-attorney corporate officer appearing pro se."). The same principle has been recognized by the United States Supreme Court. *See, e.g.*, *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."); *Commercial & R.R. Bank of Vicksburg v. Slocomb, Richards & Co.*, 39 U.S. 60, 65 (1840) ("[A] corporation cannot appear but by attorney . . . ."); *Osborn v. Bank of the United States*, 22 U.S. 738, 830 (1824) ("A corporation, it is true, can appear only by attorney, while a natural person may appear for himself.").

Accordingly, Respondent's opposition cannot be submitted on behalf of AYCT as a matter of law. Because AYCT has not filed any opposition to Petitioner's motion or sought to vacate the arbitration award entered against it, Petitioner is entitled to judgment against AYCT in the full amount of the arbitration award.

## V. Costs and Attorney Fees

Under the Premier Dealer Agreement, Petitioner is entitled to its "actual costs, expenses and attorneys' fees" incurred "in connection with obtaining and enforcing any judgment or order" obtained in a proceeding to enforce the Agreement.[12] Similarly, Respondent's Personal Guaranty provides:

> If legal action is commenced by Cricket to enforce this Guaranty or any term or condition hereof, Guarantor agrees to pay to Cricket its costs of enforcement and, as part of the costs incurred therein, such additional sums as the court or arbitrator may adjudge reasonable as costs and attorneys' fees in said action.[13]

Based on the foregoing alone, Petitioner is entitled to an award of its fees and costs in opposing Respondent's motion to vacate the arbitration award.

The court concludes that Respondent's unsupported arguments in support of his motion to vacate a valid and duly entered arbitration award provide an additional basis for an award of fees and costs. *See, e.g., Halim v. Great Gatsby's Auction Gallery, Inc.*, No. 03 C 8414, 2007 U.S. Dist. LEXIS 21891, at *8-9 (N.D. Ill. Mar. 12, 2007) (unpublished) (awarding attorneys' fees where party's "contentions [were] wholly unsupported by the evidence, and his attempt to shoehorn his disagreement with the arbitrator's interpretation of the law and the evidence into grounds for vacatur is groundless"); *see also B.L. Harbert Int'l v. Hercules Steel Co.*, 441 F.3d 905, 913-914 (11th Cir. 2006) ("When a party who loses an arbitration award assumes a

---

[12] Docket no. 3, Exhibit A.

[13] Docket no. 12, Exhibit 1B.

never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken. . . . The warning this opinion provides is that in order to further the purposes of the [Federal Arbitration Act] and to protect arbitration as a remedy we are ready, willing, and able to consider imposing sanctions in appropriate cases."). Accordingly, the court should award Petitioner its attorneys' fees and costs incurred in seeking to confirm the arbitration award and in opposing Respondent's motion to vacate the award.

## CONCLUSION AND RECOMMENDATION

In summary **IT IS HEREBY RECOMMENDED:**

1. Petitioner's motion to confirm the parties' arbitration award and enter judgment[14] be **GRANTED**. The court should enter judgment for Petitioner against Respondent and AYCT in the full amount of the arbitration award, $1,338,099.93.

2. Respondent's motion to vacate the parties' arbitration award, for a hearing, and for limited discovery[15] be **DENIED**.

3. Petitioner should be granted an award of its attorneys' fees and costs incurred in seeking to confirm the arbitration award and in opposing Respondent's motion to vacate the award, in an amount to be established by the court.

\* \* \* \* \*

---

[14] *See* docket no. 2.

[15] *See* docket no. 8.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The parties must file any objection to this Report and Recommendation within fourteen (14) days after receiving it.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to object may constitute waiver of objections upon subsequent review.

DATED this 9th day of September, 2011.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge